**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PAIGE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:23-cv-00628 |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY, | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Paige Jones, Plaintiff herein, files this Original Complaint against Defendant Allstate Vehicle and Property Insurance Company and, in support of her causes of action, would respectfully show the Court the following:

**I.**
**THE PARTIES**

1.     Paige Jones ("Jones") is an individual residing at 8621 St. Andrews Ln, Rowlett, Texas 75089 which is her true, fixed, and permanent home.

2.     Defendant Allstate Vehicle and Property Insurance Company (hereinafter referred to as "Allstate"), was, and is at the date of this filing, an Illinois insurer with its principal place of business located at 3075 Sanders Road, Suite H1A, Northbrook, Illinois, 60062-7127. Allstate, therefore, is not a citizen of the state of Texas for diversity purposes. Allstate may be served via certified mail return receipt requested via its registered agent for service in the state of Texas, C T Corporation System, 1999 Bryan St., Ste 900, Dallas, Texas, 75201.

1

## II.
## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332. Plaintiff's true, fixed, and permanent home is in Dallas County, Texas. Therefore, Plaintiff is a citizen of Texas. Defendant is incorporated in Illinois, and has its principal place of business in Illinois, and is thus a citizen of Illinois. Therefore, as Plaintiff is a citizen of Texas, and Defendant is not a citizen of Texas, complete diversity exists. Additionally, Plaintiff seeks damages in excess of $75,000. Specifically, Plaintiff seeks proceeds from her insurance policy in the amount of $110,000, plus attorneys' fees. Further, Plaintiff alleges Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

4.      Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, Dallas Division. The property at issue in this cause is in the Northern District of Texas, Dallas Division.

## III.
## FACTUAL BACKGROUND

5.      Jones is a named insured under an insurance policy issued by Allstate identified as Policy 000844010290 ("Policy"). At all times relevant to this suit, Jones was the owner of the property located at 8621 St. Andrews Ln, Rowlett, Texas 75089 ("Property") and a named insured under the Policy.

6.      In February 2021, the state of Texas experienced a wave of three unprecedented winter storms that left thousands of Texans without power, water, food, and heat for several days. More than 4.5 million homes and businesses were left without power during the storms. The Texas Department of Insurance categorized the storm as a catastrophe for claims purposes. As of March

26, 2021, the insurance and reinsurance industry loss from the winter storm has already cost the market more than **$1.7 billion** for nearly 187,000 claims, making it the costliest winter storm in Texas history. The Insurance Council of Texas based this estimate, in part, on the fact that the National Weather Service confirmed multiple record-low temperatures in and around Dallas County throughout the week of February 14, 2021.

7.     On February 16, 2021, as a result of the icy temperatures, pipes burst in the attic of Jones' home and began leaking water throughout the entire home. The damage to the home from the water was widespread:









8.    Jones promptly reported the water damage to Allstate the next day, and Allstate assigned a claim representative to adjust the claim.

9.    The adjuster assigned by Allstate did not inspect the Property until ten days later. All told, he spent only about thirty minutes scoping the complete set of damages—which included the attic, multiple rooms, and many content items. The inspection conducted by this adjuster was substandard at best. The adjuster spent an inadequate amount of time inspecting the physical and personal property, failed to conduct any testing of water damage and its impact on the structure, and failed to thoroughly scope all the damages to the Property. The adjuster performed zero testing and did not consult with an engineer to determine the extent of the damage caused by the significant water leaking prior to rendering Allstate's coverage decision. Allstate simply determined, without any reasonable basis, that the Property had sustained only minimal damages from the leak. In doing so, Allstate willfully disregarded the water damage that was apparent to the naked eye and failed to determine all areas of moisture intrusion and water damage and failed

to consider additional living expenses. The inadequacy of the inspection and investigation is further evidenced by the adjuster/Allstate's ultimate failure to give an adequate explanation as of the date of the last payment on October 5, 2021 as to why they believed there was only minimal water damage and why the damages they did observe did not warrant additional coverage despite a significant leak occurring during the Policy period and corresponding damage, or why they omitted the damages from their reports caused by obvious water damage during the Policy period with Allstate. Allstate adjuster Karen Mackey ("Mackey") was later assigned after the adjuster for Allstate inspected. Mackey advised Jones she only had two years to file her claim regarding coverage—which is not a true statement under Texas law. Mackey entered an estimate on February 26, 2021 of $33,492.51 in replacement cost value. Less depreciation of $3,533.21, the deductible of $2,000, this resulted in an actual cash value amount of $27,959.30. This was less than half of what Allstate ultimately determined was covered. Yet Jones was provided payment of $9,759.95 on February 26, 2021 and told that was the most she was going to have for coverage to repair the extensive property damage.

10.    Allstate steered Jones to Paul Davis Restoration to assess the house and make repairs. Paul Davis concluded the following areas of Jones' home were damaged from the covered event: the kitchen, flooring, ceiling, stairs, walls, upstairs. Further Paul Davis concluded Jones would have to move out completely so they could completely dry the house. Jones had approximately two days' notice to move out of the Property.

11.    Jones desperately worked with Allstate for the next several months to try to agree on a scope of damages and to resolve the claim. This included voluminous correspondence to Allstate providing all information requested by Allstate at various intervals. Jones e-mailed Allstate on April 21,2021 providing photographs taken before the floors were demolished. Taylor

Remodeling provided estimate for demolition of the flooring on March 11, 2021 in the amount $4,255.04 which was provided to Allstate. Allstate issued a check on April 8, 2021 for $4,561.60 that was received that same day. On April 12, 2021, Allstate issued a check for $10,491.21 directly to Paul Davis Restoration for restoration work. On April 15, 2021, Allstate issued a check for $1,435.93 to Jones. On April 27, 2021, Allstate issued a check for $12,166.22 for Additional Living Expenses. These funds were issued directly to Residence Inn. Taylor Remodeling provided an estimate for sheetrock repair on May 3, 2021 for $2,254.08 that was provided to Allstate. On May 11, 2021, Jones emailed Allstate providing the estimate for flooring damage. Taylor Remodeling provided an estimate for the upstairs bathroom repairs on May 16, 2021 for $4,252.92 that was provided to Allstate on May 17, 2021 by Jones. Taylor Remodeling provided an estimate for casing on May 16, 2021 for $1,200.00 that was provided to Allstate. Taylor Remodeling provided an estimate for demolition to the bathroom on May 16, 2021 for $748.83 that was provided to Allstate. Taylor Remodeling provided an estimate for painting on May 20, 2021 for $7,152.73 that was provided to Allstate. On May 26, 2021, Jones emailed Allstate inquiring about the status of flooring coverage. On May 27, 2021 Jones provided an estimate for the upstairs bathroom damages. On May 28, 2021, Allstate asked for more information on the kitchen cabinets because they were not addressed previously. Specifically, Allstate was asking for measurements and photographs. On May 28, 2021, Jones emailed Allstate a carpet estimate. On June 1, 2021 Allstate issued a check for $3,053.35 in Additional Living Expenses that were sent directly to the Residence Inn. On June 21, 2021, Allstate issued payment for $16,091.42 for floors, carpet and mold remediation. On June 28, 2021, Jones emailed Allstate providing invoices for the kitchen and an updated bathroom estimate. On June 29, 2021, Allstate emailed Jones and said they would look at cabinet and kitchen damage photographs. On July 8, 2021, Allstate issued a check for

$7,482.76 in Additional Living Expenses that were sent directly to the Residence Inn. On July 15, 2021, Jones provided Allstate photographs of water damage and mold on the kitchen cabinets, sheetrock and baseboards. On July 27, 2021, Jones provided Allstate a sheetrock estimate. On August 5, 2021, Allstate issued a check for $8,032.15 in Additional Living Expenses that were sent directly to the Residence Inn. On August 30, 2021, Allstate issued a check for $15,613.10. On September 7, 2021, Jones emails photographs of mold and water damage to kitchen cabinets. On September 12, 2021, Millwood Remodeling & Design provided an estimate on September 12, 2021 for $45,950.00 that was provided to Allstate. On September 24, 2021, Jones sent Allstate measurements of the cabinets. On October 5, 2021, Keith Crandall with Allstate revised Allstate's estimate. Karen Mackey with Allstate then revised the estimate again—determining the replacement cost value of damages was $60,004.68. On that same date, October 5, 2021, Allstate issued its last payment of $12,958.35.

12.     On October 27, 2021, Allstate claimed it sent Jones an Itel packet. On November 3, 2021, Jones provided Allstate storage invoices. On November 12, 2021, Jones advised Allstate she has not received the Itel packet.

13.     On October 5, 2021, Allstate breached the insurance contract because Allstate still owes Jones approximately $110,000 in contract damages and has failed to pay Jones that amount since October 5, 2021. After Allstate issued its last payment, Jones has been desperately trying to get Allstate to fully indemnify her for the remaining covered losses under the terms of the Policy.

14.     Jones, faced with the reality she might be forced to pay for the remainder of the repairs out-of-pocket, then turned to Marcus Cox ("Cox"), a licensed Texas public adjuster, to work with Allstate to recover the remaining contract damages owed to Jones to properly indemnify her. Jones retained Cox on December 7, 2021. Cox was not able get Allstate to pay any additional

amounts, and Jones and Cox subsequently parted ways. After she parted ways with Cox, Jones reached out to Allstate directly, and the Allstate adjuster advised her to send in what she contended was still due and owing but not yet paid. In response, Jones promptly provided the damaged items as well as kitchen estimate and storage costs that had not yet been paid. Allstate subsequently responded to Jones that the remainder of the claim was being denied.

15.     On October 23, 2022, Jones received correspondence from Isaac Reading ("Reading") of Allstate, who represented he was the content adjuster assigned to the claim and would be addressing the personal property items regarding her claim. Mr. Reading asked Jones to take photographs of damaged items and submit them. Jones responded on November 3, 2022 and provided the various attachments of the damaged items. To date, Allstate has failed to pay approximately $35,000 in personal property items damaged by the water loss. Further, Allstate has failed to pay approximately $10,000 in moving expenses.

16.     Although Mackey, Crandall, Reading, and Allstate were aware of Jones' clear and present water damage and the reported damage was covered by the Policy, they decided the claim should be partially denied without conducting a thorough and reasonable inspection of the damages. The adjusters' inadequate investigation of the claim was relied upon by Allstate in this action and resulted in Jones' claim being improperly undervalued, under scoped and underpaid. After requesting Allstate reconsider its improper investigation and underpayment and consider photographs of water damage and a line-by-line estimate from a licensed public adjuster, Allstate simply reconfirmed its prior findings and has failed to pay the total amount due. Again, this meant Jones would receive inadequate payment to perform the necessary repairs to the Property.

17.     Allstate, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Mackey, Crandall, and

Reading, ultimately approving an improper adjustment of and an inadequate and improper estimate of Jones' claim. Allstate misrepresented Jones' damages were not covered, when the losses in fact were clearly covered causes of loss during the Policy's period. Specifically, Allstate represented to Jones the majority of the damage was not covered by the Policy without any investigation when, in fact, Allstate and Mackey knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages in excess of the Policy's deductible was a clear covered loss. Further, the investigation exceeded the statutory mandated deadlines.

18.    Together, Allstate, Mackey, Crandall, and Reading set out to deny properly covered damages. Because of their unreasonable investigation and failure to provide coverage for the damages sustained, Jones' claim was improperly adjusted, and Jones was denied adequate payment to repair the Property. To this date, Jones has yet to receive proper payment under the insurance Policy.

**IV.**
**CAUSES OF ACTION**

19.    Each of the foregoing paragraphs is incorporated by reference in the following:

**A.    Breach of Contract**

20.    Allstate had a contract of insurance with Plaintiff. Allstate breached the terms of that contract on October 5, 2021 by wrongfully denying the claim, and Plaintiff was damaged thereby.

**B.    Prompt Payment of Claims Statute**

21.    The failure of Allstate to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code. Allstate still owes Jones $110,000 in contract damages and has failed to pay her said amount since October 5, 2021.

22.    Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.    Bad Faith/Deceptive Trade Practices Act ("DTPA")**

23.    Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

24.    Defendant violated Section 541.051 of the Texas Insurance Code by:

(1)    making statements misrepresenting the terms and/or benefits of the policy. As referenced above, Allstate mispresented coverage for water damage to the Property during the Policy period was a covered cause of loss and misrepresented to Jones the coverage's terms.

25.    Defendant violated Section 541.060 by:

(1)    misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

(2)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3)    failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4)    failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

(5)    refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, Allstate failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond

to multiple requests for information, failed to disclose information relied on its investigation, failed to conduct testing of the damage, failed to allocate damage occurring during the Policy, failed to consider any weather data and improperly claimed no water damage was reported on the date of loss.

26.    Defendant violated Section 541.061 by:

(1)    making an untrue statement of material fact;

(2)    failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

(3)    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented water damage that occurred during the Policy was not a covered loss, failed to provide requested information used to render its claim decision, and claimed water damage was preexisting without conducting a reasonable investigation.

27.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

28.    Defendant has violated the Texas DTPA in the following respects:

(1)    Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

(2)    Allstate failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such

information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

(3)     Allstate, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that Allstate took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

29.    Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.    Breach of the Duty of Good Faith and Fair Dealing**

30.    Defendant Allstate's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

31.    Defendant Allstate's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant Allstate knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## V.
## KNOWLEDGE

32.    Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.    Attorneys' Fees**

33.    Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

34.    Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

35.    Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.
## CONDITIONS PRECEDENT

36.    All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.
## JURY DEMAND AND PRAYER

37.    Plaintiff requests that a jury be convened to try the factual issues of this case.

38.    WHEREFORE, PREMISES CONSIDERED, Paige Jones prays that, upon final hearing of the case, she recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Paige Jones be awarded attorneys' fees

through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such

other and further relief, general or special, at law or in equity, to which Paige Jones may show

herself to be justly entitled.

Respectfully submitted,

*/s/ Christopher P. Peirce*
Jeffrey T. Embry
Bar Number: 24002052
Margaret C. Pennell
Bar Number: 24116893
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No.  903-526-1772
Telecopier No.  903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

AND

Christopher P. Peirce
Bar Number: 24041509
Hossley Embry, LLP
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
cpeirce@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**